## IN THE UNITED STATES DISTRICT COURT
## DISTRICT FOR MARYLAND

| | | |
|---|---|---|
| RICHARD MCCULLOUGH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. AW-08-515 |
| | ) | |
| PRINCE GEORGE'S COUNTY, | ) | |
| MARYLAND | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Currently pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 24) and Defendant's Motion to Strike (Doc. No. 27). Plaintiff brought this action alleging violations of the Americans with Disabilities Act ("ADA"), §49B of the Maryland Fair Employment Practices Act, the Prince George's County, Maryland code,[1] and the Family Medical Leave Act ("FMLA") against his employer. The Court has reviewed the entire record as well as the pleadings with respect to this motion and finds that no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons articulated below, the Court GRANTS Defendant's Motion for Summary Judgment and GRANTS Defendant's Motion to Strike.

## FACTUAL BACKGROUND

Richard McCullough ("Plaintiff" or "McCullough") began employment with Prince George's County Department of Corrections ("Defendant") as a Correctional Officer approximately twenty-one years prior to the filing of the pending motions. At some point, he earned the rank of Sergeant. On May 31, 2006, Plaintiff turned in a leave slip, dated June 1, 2006, requesting compensatory time for June 5, 2006. Plaintiff did not ensure that managerial officials had approved his leave request, as required by the Department of Correction's policy;

---

[1] The complaint makes no reference to a particular provision of the Prince George's County, Maryland code.

instead he assumed that leave was approved.  The leave request was neither approved nor denied.

Nevertheless, Plaintiff failed to report to work on June 5, 2006.

On the day in question, Sergeant John Martin ("Sgt. Martin") was the only employee ranked Sergeant on duty.   According to Defendant, the Department of Corrections Policy requires at least two Sergeants to be present during each shift. Plaintiff's immediate supervisor, Martha Brown ("Brown"), and Sgt. Martin called Plaintiff at his home and insisted that Plaintiff report to work.   According to Plaintiff, his supervisor and co-Sergeant threatened to charge Plaintiff with AWOL or absent without leave.  Plaintiff testified in his deposition that prior to the June 5 incident he had not informed his supervisors that he suffered from high blood pressure and posttraumatic stress disorder.   In fact, Plaintiff did not receive a diagnosis of high blood pressure and posttraumatic stress disorder until after this incident.   In any event, Plaintiff complied with his supervisor and co-Sergeant's request to report to work, and upon arriving immediately went to the medical unit.   The medical unit checked Plaintiff's blood pressure, determined that it was high, and recommended that Plaintiff see his physician.  Plaintiff was then permitted to take leave for that day.  Plaintiff was not charged with any disciplinary action as a result of this incident.   An independent union investigation of this incident concluded that Plaintiffs' allegations were unfounded.

Plaintiff filed a charge of discrimination with the Prince George's County Human Relations Commission ("HRC") on August 2, 2006, which only alleged violations of the ADA in connection with the denial of his leave for June 5, 2006,[2] and received the Notice of Right to Sue on October 2, 2007.  Plaintiff filed his original complaint in December 2007, in the Circuit Court for Prince George's County, Maryland.  Defendant removed this case to this Court because the

---

[2] Plaintiff notes in his charge for discrimination that the leave request was dated May 31, 2006, although a copy of the leave request is dated as June 1.

case deals with federal statutes.  In his amended complaint, Plaintiff alleges additional incidents of unlawful employment action.  In Count I of the amended complaint, Plaintiff contends that the Defendant repeatedly refused Plaintiff's request for leave to attend medical appointments, and harassed and disciplined Plaintiff due to the request.  As an example, Plaintiff points to a February 9, 2006, incident in which Defendant issued Plaintiff a Letter of Reprimand due to leave taken on December 18, 2005.[3]

The Plaintiff also alleged "other acts of discrimination and failure to accommodate his disability."  (Am. Compl. ¶8(f).)  Finally, Plaintiff alleges that Defendant failed to remedy past discriminations based on his disability.   The only other incidents of Defendant's alleged discrimination appear to relate to a March 2007 incident, in which the Plaintiff was charged with hazardous materials violations and Plaintiff's general representations that he was denied training opportunities and specialized post appointments.   Defendant filed the instant Motion for Summary Judgment and a Motion to Strike Plaintiff's Affidavit filed in support of Plaintiff's response to the Motion for Summary Judgment.  The deadlines for all responses to the pending motions have now passed, and the motions are now ripe for ruling.

## DEFENDANT'S MOTION TO STRIKE

As a preliminary matter the Court will address Defendant's Motion to Strike.  Federal Rule of Civil Procedure 12(f) states that "[u]pon ... motion made by a party …, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Furthermore, Federal Rule of Civil Procedure 56(e) states that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters

---

[3] The Letter of Reprimand appears to relate to the Plaintiff's alleged violations of the employer's policy relating to working overtime after requesting sick leave.   According to the Plaintiff's deposition several employees misunderstand the sick leave policy, and the policy was subsequently changed.

stated." Accordingly, such affidavits cannot be conclusory or based on hearsay. *Rohrbough v. Wyeth Lab., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251-52 (4th Cir. 1991). Moreover, a party cannot submit an affidavit solely for the purpose of creating a dispute of fact or which contradicts deposition testimony. *See Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 438 (4th Cir. 1999).

Here, the Plaintiff filed an affidavit along with his opposition to the Defendant's Motion for Summary Judgment, subsequent to the taking of depositions in this case. First, the Defendant argues that paragraphs 1-8 of the Plaintiff's affidavit are merely reiteration of facts already disclosed during deposition testimony. Defendant also claims that paragraph 9 of the affidavit, in which Plaintiff states he informed his employer that he was sick for the entire week, is Plaintiff's attempt to create a disputed fact that had not been articulated prior to or during the discovery process. Defendant argues that Plaintiff's allegation in paragraph 12 of his affidavit, that Sergeant Martin was disciplined for providing deposition testimony in this matter is hearsay and that Plaintiff lacks personal knowledge as to this event. Lastly, the Defendant contends that the portion of paragraph 12 that addresses Plaintiff's alleged claim that he was denied a promotion should be stricken because the Plaintiff was questioned about such a claim during his deposition but was unable to provide specific facts until he filed his affidavit. Plaintiff has filed no opposition with respect to the Defendant's Motion to Strike. Accordingly, the Court believes that the Defendant has presented compelling arguments in support of its motion and grants the motion.

## STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*

4

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences.  *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998).  Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment.  *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## ANALYSIS

**I.    Scope of the Administrative Charge of Discrimination**

Defendant attempts to seek summary judgment by reasserting that Plaintiff's complaint, except for the June 5, 2006, incident, exceeds the scope of his administrative charge of discrimination, an argument that Defendant previously made in its Motion to Dismiss (Doc. No. 13).  However, in an Order dated December 5, 2008, (Doc. No. 16) the Court addressed this argument and found that Plaintiff's complaint is reasonably related to the claims asserted in his charge of discrimination. Accordingly, Defendant is not entitled to summary judgment on this ground.

## II.     Failure to Accommodate Claim under the ADA

To proceed with a failure to accommodate claim under the ADA a plaintiff must demonstrate the following: "(1) he suffers from a disability within the meaning of the ADA; (2) the employer had notice of his disability; (3) the plaintiff could have performed the essential functions of his position with reasonable accommodation; and (4) the employer refused to make such accommodations." *Rhoads v. F.D.I.C.*. 257 F.3d 373, 387 (4th Cir. 2001).  Under the ADA, a person with a disability must either "(1) [suffer] from a physical or mental impairment that substantially limits . . . a major life activity; (2) [have] a record of such impairments; or (3) [be] regarded as having such an impairment."  42 U.S.C. § 12102(1) (2006).

Here, the Defendant has conceded for the sake of argument that the Plaintiff's impairments, hypertension and posttraumatic stress disorder, qualify as a disability under the ADA.  However, Defendant argues that it never had notice that the Plaintiff suffered from hypertension and posttraumatic stress disorder until after the June 5, 2006, incident in which the Defendant requested that Plaintiff report to work because he had not received approval for leave. In fact, Plaintiff concedes that he had not made his supervisor aware of a specific impairment because he was not diagnosed with either condition until after the June 5 incident.  Thus, the Defendant's refusal to grant leave in this incident, or any prior instance, cannot reasonably be construed as a failure to accommodate the Plaintiff because the Defendant was not aware of the need to make such accommodations.  Furthermore, although Defendant required Plaintiff to come to work on June 5, the Defendant permitted Plaintiff to go directly to the medical unit and allowed him to take leave once the Defendant became aware that the Plaintiff's blood pressure was high.  Lastly, as the Defendant represents, and as reflected in the record, the Defendant has granted Plaintiff's subsequent leave requests.  Accordingly, the Court finds that no reasonable jury could find that Defendant failed to accommodate the Plaintiff's impairments and grants the

Defendant's summary judgment motion with respect to the Plaintiff's failure to accommodate claim.

**III.    Discrimination and Hostile Work Environment Claims**

In the absence of direct evidence of discrimination or harassment, as is the case here, a plaintiff's claims are analyzed under the burden-shifting proof scheme established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).   In the Fourth Circuit, claims for disability discrimination under the ADA are analyzed under the *McDonnell Douglass* framework.  *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 258 (4th Cir. 2006).  First, the plaintiff must establish a prima facie case of discrimination or harassment.  *Id.* at 802.  After establishing a prima facie case, the burden shifts to the Defendant to proffer a "legitimate, nondiscriminatory reason" for the challenged conduct.  *Id.*  Upon this showing, the plaintiff must prove by a preponderance of the evidence that the reasons stated by the employer are actually pretext for a discriminatory purpose. *Id.* at 804.  A plaintiff can demonstrate pretext if in addition to satisfying a prima facie case there is "sufficient evidence  . . . that the employer's asserted justification is false" or "unworthy of credence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *Tx. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

**A.  Discrimination Based on a "Regard as" Disability Claim**

Title I of the ADA provides that "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112 (2006).  To prove a prima facie case for disability discrimination under the ADA the plaintiff must show: (1) that he has a disability; (2) that he is otherwise qualified for the employment or benefit in question; and (3) that he "suffered an adverse employment action due to discrimination on the basis of a

disability."[4] *Brockman v. Snow*, 217 Fed. Appx. 201, 208 (D. Md. 2007) (quoting *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995)).  As discussed above, a plaintiff can establish the first prong by either showing that (1) he has an actual physical or mental impairment that substantially limits a major life activity; (2) his employer regarded him as having a disability; or (3) he has a record of having such a disability.  § 12102(1).  An employer regards an employee as having a disability if "(1) [the] employer "mistakenly believe[d] that [she] has a physical impairment that substantially limits one or more major life activities," or (2) [the] employer "mistakenly believe[d] that an actual, nonlimiting impairment substantially limits one or more major life activities."  *Rhoads v. F.D.I.C.*, 257 F.3d 373, 390 (4th Cir. 2001) (citations omitted).  In other words, an employer violates the ADA when it makes employment decisions "based on a physical impairment, real or imagined, that is regarded as substantially limiting a major life activity."  *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489 (1999).  Furthermore, it is well established in the Fourth Circuit, that an adverse employment action must "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.  *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004).

Here, based on the Plaintiff's Charge of Discrimination, the Plaintiff's claim for disability discrimination appears to be a "regard as" theory.[5]  Defendant contends that it did not regard Plaintiff has having a disability that would interfere with his ability to perform the duties of a Correctional Officer and was not aware that Plaintiff suffered from any impairment.  In fact, Defendant actually wanted Plaintiff to report to work to perform his normal job duties making it

---

[4] The Maryland Fair Employment Practices Act and the Prince George's County Code have substantially identical provisions to the ADA statute.  *See Ridgely v. Montgomery County, Md.*, 883 A.2d 182, 193 (Md. Ct. Spec. App. 2005).

[5] Neither party actually address whether Plaintiff suffered from an actual physical or mental disability within the meaning of the ADA.  To the extent that Plaintiff's claim is not limited to a "regard as" theory, the Court's analysis would not change with regard to whether the Plaintiff suffered an adverse employment action.

difficult to comprehend how this decision demonstrates that the Defendant perceived the Plaintiff to have an impairment that limits a major life activity.  The Defendant does not dispute that the Plaintiff performed his assigned tasks satisfactorily.  Defendant also argues that Plaintiff did not suffer any adverse employment action because it permitted Plaintiff to take leave arising from the June 5 incident after it became aware that Plaintiff's blood pressure was high.  Plaintiff contends that he did suffer from an adverse employment action because although he was eventually permitted to take the leave, he was first threatened with disciplinary action if he did not report to work.  However, the Plaintiff has not shown that these threats of discipline ever materialized or resulted in an ultimate employment decision that altered his terms and conditions of employment.  Lastly, the Defendant demonstrated that it granted Plaintiff's leave requests subsequent to the June 5 incident, after it became aware of Plaintiff's physical and mental conditions, which tends to negate an inference that Defendant's prior actions were the result of a motive to discriminate against the Plaintiff based on his disability.

In any event, Defendant offers legitimate nondiscriminatory reasons for requiring Plaintiff to report to work on the day in question, namely that its policy required at least two Sergeants to work a given shift and on the day in question only one reported to work.  Plaintiff's assertion that Defendant does not normally follow this policy and that lower ranked officers could have filled in for an absent Sergeant is not sufficient to show that the Defendant's reason is pretext.  Accordingly, the Court finds that Defendant's Motion for Summary Judgment should be granted with respect to Plaintiff's disability discrimination claim.

### B. Hostile Work Environment Claim

To prove a hostile work environment claim under the ADA a plaintiff must prove: "(1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to

alter the terms, conditions, or privileges of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. *Fox v. General Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001) (citations omitted).  The plaintiff must show that he not only subjectively believed that his workplace was hostile, but also that a reasonable person could find the workplace to be hostile.  *Id.* at 178.  The Court generally considers a number of factors to determine whether a reasonable person could find the workplace conduct as severe and pervasive such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it reasonably interferes with an employee's work performance; [and] its affect on the employee's psychological well-being." *Id.* at 178 (quoting *Harris  v. Forklift Sys., Inc.*, 210 U.S. 14, 23 (1993)).

Here, the Defendant contends that Plaintiff's allegations of harassment relate to disciplinary charges connected with Plaintiff's alleged violations of its policies and procedures. Although Plaintiff does not address his harassment claim in his response to the motion for summary judgment, it appears from the record, including deposition testimony that Plaintiff relies on three to four incidents as harassment.  The first is a February 2007 letter of reprimand arising from Plaintiff's leave request for sick leave and the Department's policy on requesting overtime after seeking sick leave.  This policy was subsequently changed after a number of employees committed the same error regarding the policy.  Second, there is the allegation that his supervisor threatened to charge Plaintiff with AWOL if he did not report to work on June 5, 2006, after discovering that his leave request had not been approved.  In addition, there is a June 2007 incident in which Plaintiff, along with several other employees, were charged with violating the Defendant's policy concerning hazardous materials.  Finally, there appears to be

10

some unsupported allegations that Defendant denied Plaintiff training and special post assignments.

To the extent that Plaintiff is relying on these incidents to prove his harassment claim, the Court believes that they do not sufficiently indicate harassment so severe or pervasive to alter the Plaintiff's terms or conditions of employment.  Instead, all of these incidents appear to relate to Defendant's legitimate business reasons to enforce its policies and procedures.  Moreover, Defendant contends that Plaintiff did not utilize its anti-harassment procedure before filling a complaint for harassment.  Accordingly, the Defendant's Motion for Summary Judgment is granted on the harassment claim.

## IV.    Family Medical Leave Act Claim

The FMLA provides that an eligible employee is entitled to 12 weeks of leave per year for a 'serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612 (a)(1)(D) (2006)  Moreover, there are two potential claims under the FMLA.  An employee can either claim that his employer interfered with his substantive rights under the FMLA, such as by "discouraging an employee from taking leave," or that his employer retaliated against him for exercising FMLA rights.  *Walker v. Gambrell*, 647 F. Supp. 2d 529, 538 (D. Md. 2009).  According to Plaintiff's Amended Complaint, he is bringing his FMLA claim under a theory that his employer interfered with his FMLA rights.

In the Fourth Circuit, to state a claim of interference with FMLA rights, the employee must show that "the employer: (1) interfered with his or her exercise of FMLA rights; and (2) caused prejudice thereby."  *Reed v. Buckeye Fire Equipment*, 241 Fed. Appx. 917, 924 (4th Cir. 2007).  In *Reed*, the Fourth Circuit explained that "actionable interference exits where the employer . . . interferes . . . with the exercise of any the rights protected [under] the FMLA" and

11

that prejudice is established "where an employee loses compensation or benefits . . . ; sustains other monetary losses . . . ; or suffers some loss in employment status remediable through 'appropriate' equitable relief." *Id.* (citation omitted). As stated by this Court,

> The core requirements for triggering an employer's obligations [under FMLA] are a *serious health condition* and \*516 *adequate communication,* meaning a timely communication sufficient to put an employer on notice that the protections of the Act may apply. *See* 29 U.S.C. § 2612(a)(1)(D), (e); 29 C.F.R. §§ 825.302-.303. When timely and adequate communication is not given, the protections of the Act do not apply, even if the employee in fact has a serious health condition.

*Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp. 2d 508, 515-16 (D. Md. 2008). Thus, in addition to proving that the employer interfered with the employees rights which caused prejudice to the employee, the employee also must show that: (1) "[he] was an eligible employee"; (2) "[his] employer was covered by the statute"; (3) "[he] was entitled to leave under the FMLA"; and (4) "[he] gave [the] employer adequate notice of her intention to take leave." *Id.* at 516. (explaining that although an employee does not need to explicitly state that he seeks to take FMLA leave, mere notice that the employee is sick without details about the nature of the illness is insufficient to indicate to the employer that FMLA leave is necessary).

Here, the Defendant argues that the Plaintiff is not entitled to FMLA leave because during his deposition testimony, Plaintiff stated that he never sought FMLA leave. As Plaintiff correctly explains, he did not need to explicitly request FMLA leave. Plaintiff argues that he informed his employer that he needed to attend a medical appointment on June 5, 2006, on the leave request that he submitted the week prior to the appointment. However, as this Court explained in *Rodriquez*, simply notifying the Defendant that the Plaintiff is sick or needs to attend a medical appointment, is insufficient to alert the employer that FMLA leave is needed, especially without information concerning the nature of the illness. FMLA leave only entitles an employee to leave for serious health conditions, and unless the employee provides some

notification that the medical appointment is in connection with a qualifying condition, the employer is unable to ascertain whether FMLA is necessary.  Moreover, as Defendant argues, Plaintiff has suffered no cognizable damages when it required him to report to work on June 5, 2006, especially when Plaintiff was permitted to leave shortly after arriving and visiting the medical unit.  Although Plaintiff may have been inconvenienced by missing his medical appointment or threatened with disciplinary charges for not reporting to work, there is no evidence that he lost compensation or was otherwise disciplined because of this incident. Accordingly, the Court finds that Plaintiff has not provided sufficient evidence for a reasonable jury to conclude that the Defendant violated the FMLA and grants the Defendant's Motion for Summary Judgment on this claim.

## CONCLUSION

For the reasons articulated above, the Court GRANTS Defendant's Motion for Summary Judgment and the Motion to Strike.  A separate Order shall follow.


February 24, 2010                                                          /s/
        Date                                      Alexander Williams, Jr.
                                                    United States District Court Judge